UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRUISIN1, INC., CRUISIN CLUB, AND TIGER WHITE AND STANLEY KALISEK, Individually, jointly and severally, <br><br> Defendants. | No. 4:17-cv-11155-TGB-DRG <br> Hon. Terrence G. Berg |

**ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT AS TO CRUISIN1, INC. AND DISMISSING DEFENDANTS TIGER WHITE AND STANLEY KALISEK (ECF No. 33)**

In this case, Defendants allegedly intercepted and exhibited for public viewing at their bar the boxing event entitled *Manny Pacquiao v. Timothy Bradley, II WBO Welterweight Championship Fight Program* for private financial gain without paying the requisite commercial licensing fee to Plaintiff. *See, e.g.,* ECF No. 1.

Before the Court is Plaintiff's "Renewed Motion for Default Judgment Against Defendant Cruisin1 Inc., and to Dismiss Defendants, Tiger White, and Stanley Kalisek." ECF No. 33. The record reflects Cruisin1 Inc. was properly served with notice of this pending lawsuit through service on its resident agent, Cheyenne

1

Usewick, on July 3, 2017. ECF No. 8; ECF No. 5-1, PageID.27 (corporate entity details). Defendant Cruisin1 Inc. has failed to respond to the complaint or otherwise plead. On July 26, 2017, Plaintiff obtained a clerk's entry of default. ECF No. 12.

Once a default is entered against a defendant, that party is deemed to have admitted all the well-pleaded allegations in the complaint pertaining to liability. *See Ford Motor Co. v. Cross,* 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Matter of Visioneering Construction*, 661 F. 2d 119, 124 (6th Cir. 1981)).

On January 22, 2018 the Court held a hearing on Plaintiff's motion for default judgment; only counsel for Plaintiff appeared. Although Plaintiff requested a judgment on both liability and an award of damages, the Court concluded that it would be appropriate to enter judgment in favor of Plaintiff and against Defendant Cruisin1 Inc. on liability only at that time. This is because Plaintiff sought and was granted leave to amend its complaint, dismissing one defendant and adding two new individual defendants who Plaintiff believed may be liable. *See* Amended Complaint, ECF No. 18; *and* Stipulation and Order, ECF No. 19. Because the complaint sought joint and several liability against all defendants, the Court thought it proper to await the determination of any amount of damages until after the litigation regarding the additional defendants is completed.

Judgment was therefore entered in favor of Plaintiff and against Defendant Cruisin1 on the issue of liability only.

Plaintiff now moves to enter default judgment against defendant Cruisin1 on the issue of damages, claiming that "[t]here is sufficient evidence to calculate and liquidate damages with the need for an evidentiary hearing to establish damages." ECF No. 33, PageID.163. Plaintiff alleges that the cost of the program—if defendants had legally purchased the rights to display it—was $3200.00. ECF No. 33-6 (rate card). Plaintiff claims as well to have incurred fees and costs in relation to this action totaling $7,201.25 ($6,198.50 in attorney's fees, and $1002.75 in costs). ECF No. 33–7 (Plaintiff's counsel's time and expense tracking).

Plaintiff also seeks judgment against defendant Cruisin1 in the amount of $110,000.00, for "enhanced statutory damages," plus $7,201.25 for "reasonable attorney fees [and] costs," plus "statutory interest on the judgment." ECF No. 33, PageID.164. Plaintiff further seeks to dismiss defendants Tiger White and Stanley Kalisek from this case.

For the reasons explained below, the Court **GRANTS** Plaintiff's Renewed Motion for Default Judgment Against Defendant Cruisin1 Inc., and to Dismiss Defendants, Tiger White, and Stanley Kalisek, awards damages of $10,000, and attorneys' fees and costs of $7,201.25. ECF No. 33.

## I. Statutory Damages

### A. Communications Act of 1934 – 47 U.S.C. § 605

The Communications Act of 1934, as amended, prohibits the unauthorized interception of radio communications. 47 U.S.C. § 605(a). That section has been interpreted as outlawing satellite signal piracy and applies in this case. *Cablevision of Michigan, Inc. v. Sports Palace, Inc.*, 27 F.3d 566 (6th Cir. 1994). Plaintiff's complaint establishes the elements of liability required to state a claim under 47 U.S.C. § 605.

Section 605 permits recovery of actual damages or statutory damages of between $1,000–$10,000 for each *non-willful* violation of this section. 47 U.S.C. § 605(e)(3)(C)(i)(I) & (II). Non-willful violation of this section is a strict liability offense—it is unnecessary to prove intent or knowledge to establish liability under the Act. *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08-cv-1259, 2009 WL 1767579 at *4 (N.D. Ohio June 22, 2009), citing *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1004 (2d Cir. 1993) and *Kingvision Pay Per View Ltd. v. Williams*, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998).

The court also has discretion to increase the award by up to $100,000.00 for *willful* violations of the act. 47 U.S.C. § 605(e)(3)(C)(ii) ("In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court

in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section."). The statute does not define "willful," but in *Joe Hand Promotions, Inc. v. Easterling*, the Northern District of Ohio collected cases discussing the parameters of willfulness under Section 605,

> "The Supreme Court has defined "willful" in the context of civil statutes as conduct showing "disregard for the governing statute and an indifference to its requirements." *Transworld Airlines, Inc. v. Thurston,* 469 U.S. 111, 127, 105 S. Ct. 613, 83 L.Ed.2d 523 (1985).
>
> For purposes of § 605, courts have identified conduct as "willful" where there were repeated violations over time, or there was a sophisticated understanding of the satellite programming industry and there was a violation of the statutes that regulate the conduct. *Cable/Home Communication Corp. v. Network Prod.,* 902 F.2d 829, 851 (11th Cir. 1990); *Home Box Office v. Champs of New Haven, Inc.,* 837 F. Supp. 480, 484 (D. Conn. 1993).
>
> Other district courts have ruled that a court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. *Time Warner Cable of New York City,* [*a Div. of Time Warner Entm't Co., L.P. v. Olmo*, 977 F. Supp. 585, 589 (E.D.N.Y. 1997)]; *Fallaci v. The New Gazette*

> *Literary Corp.,* 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).
>
> One district court has interpreted 47 U.S.C. § 605(e)(3)(C) (ii) to include substantial unlawful monetary gains by a defendant as an appropriate factor to consider when exercising discretion in increasing the amount of statutory damages. *Home Box Office,* 837 F. Supp. at 484.
>
> Another district court has required that there must be egregious circumstances before awarding maximum statutory damages. *Joe Hand Promotions v. Burg's Lounge,* 955 F. Supp. 42, 44 (E.D. Pa. 1997)."

*Joe Hand Promotions, Inc. v. Easterling*, No. 4:08CV1259, 2009 WL 1767579, at *6 n.2 (N.D. Ohio June 22, 2009) (quoting *Buckeye Cablevision, Inc. v. Sledge* 2004 WL 952875, 2 (N.D. Ohio Apr. 8, 2004)). In similar cases, this court and others have approached damages using a variety of methods. *J & J Sports Productions, Inc v. Matti*, No. 2:13-cv-13963 (E.D. Mich. Nov. 24, 2014) (per-patron fee multiplied by factor of four); *J & J Sports Production, Inc. v. Sig Brothers Too, LLC,* 2:13-cv-12014 (E.D. Mich. April 16, 2014) (default judgment awarding all damages requested by Plaintiff); *Joe Hand Promotions, Inc. v. Granada Lounge, Inc.,* No. 11-13062, 2012 WL 447272, at *3 (E.D. Mich. Feb. 13, 2012) ($3,000 is adequate deterrent and not an amount that "could put Defendants out of business" where Plaintiffs requested $110,000); *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501–02 (S.D.N.Y. 2008)

(When the exact number of patrons is known, the court may multiply that number by an amount between "$20 and $300, although most courts set a number around $50."); *J & J Sports Prods., Inc. v. Trier,* No. 08–cv–11159, 2009 U.S. Dist. LEXIS 6415, at *3 (E.D. Mich. Jan. 29, 2009) ("[f]acts relevant to this determination include the number of patrons in the establishment at the time the violation occurred, the seating capacity of the establishment, the various rates, including the residential rate, charged by the plaintiff for the viewing of the broadcast, and whether the defendant charged patrons a cover for the viewing or was likely to have obtained significant profits in another manner."); *Joe Hand Promotions, Inc. v. McBroom*, No. 5:09-cv-276(CAR), 2009 WL 5031580 at *6 (M.D. Ga. Dec. 15, 2009) (treble licensing fee)); *Entertainment by J & J, Inc. v. Suriel,* 01 Civ. 11460(RO), 2003 WL 1090268 (S.D.N.Y. Mar.11, 2003) (When the exact number of patrons is unknown, a flat sum based on considerations of justice may be awarded).

### B. Cable and Television Consumer Protection and Competition Act of 1992 – 47 U.S.C. § 553(a)

The Cable and Television Consumer Protection and Competition Act of 1992 makes it illegal to intercept without authorization any communications service offered over a cable system. 47 U.S.C. § 553(a)(1). Arranging to air a pay-per-view cable

cast program without paying for it is intercepting without authorization a communications service offered over a cable system. *See Id.*; *see also Cablevision of Michigan, Inc. v. Sports Palace, Inc.*, 27 F.3d 566, No. 93-1737 (6th Cir. 1994) (table).

This Act permits recovery of actual damages or statutory damages of between $250–$10,000 for *non-willful* violations. 47 U.S.C. § 553(c)(3)(A)(i)&(ii). As with Section 605, this is a strict liability issue, and no proof of knowledge or intent need be shown. *Easterling*, 2009 WL 1767579 at *4. The court also has discretion to increase the award by up to $50,000.00 for *willful* violations of the act—violations done for indirect commercial advantage or private financial gain. 47 U.S.C. § 553(c)(3)(B).

### C. Plaintiff may only recover under one section, not both

When a defendant is liable under both Sections 553 and 605, a plaintiff may recover under only one section. *See J & J Sports Productions, Inc. v. Palumbo*, No. 4:12-cv-2091, 2012 WL 6861507 at *3 (N.D. Ohio Dec. 12, 2012); *Joe Hand Promotions, Inc. v. RPM Management Co. LLC*, No. 2:11-cv-377, 2011 WL 5389425 at *2 (S.D. Ohio Nov. 7, 2011). In this case Plaintiff requests damages under Section 605(a) and seeks an award of statutory damages (as opposed to actual damages). ECF No. 33, PageID.172–173 (citing 47 U.S.C. § 605(e)(3)(C)(i)(II)).

Plaintiff requests enhanced damages, alleging that defendant *willfully* violated Section 605. ECF No. 33, PageID.173–174. Plaintiffs say that Defendant's willfulness can be shown here based on "defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct." ECF No. 33, PageID.174 (quoting *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08CV1259, 2009 WL 1767579, at *6 n.2 (N.D. Ohio June 22, 2009)).

But in the cases cited by the *Easterling* court upon which Plaintiff relies, Defendant had not merely failed to appear. In the first, Defendant had also "modified the investigators' two devices to receive [Plaintiff's] cable programming." *Time Warner Cable of New York City, a Div. of Time Warner Entm't Co., L.P. v. Olmo*, 977 F. Supp. 585, 589 (E.D.N.Y. 1997). The second case cited by the *Easterling* court dealt with unauthorized reproduction of a newspaper article and photograph in violation of the copyright law, not Section 605. *Fallaci v. The New Gazette Literary Corp.,* 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).

In the instant case, Plaintiff has never laid out how exactly Defendant obtained the signal for the boxing match, whether by paying for a less expensive residential license and then broadcasting it within the establishment, or by modifying some piece of hardware to steal the signal, or by some other means. The

mere act of playing the broadcast—even where Defendant failed to appear or defend, and may have obtained "commercial advantage or private financial gain"—is not enough to establish that the Defendant *willfully* violated Section 605. Though perhaps unlikely, the record before the Court cannot exclude the possibility that Defendant's televisions played the boxing match through some technological happenstance or mistake on the part of Plaintiff, without any act from Defendant causing it to happen. A showing of willfulness under Section 605 requires, at the very least, an allegation that Defendant took *some* action to cause the program to be broadcast without paying the licensing fee.

In the instant case, there is also no allegation of "disregard for the governing statute and an indifference to its requirements," nor "repeated violations over time," nor "sophisticated understanding of the satellite programming industry[.]" *See Transworld Airlines, Inc.,* 469 U.S. at 127; *Cable/Home Communication Corp.*, 902 F.2d at 851; *Home Box Office,* 837 F. Supp. at 484. Plaintiff similarly makes no showing of "substantial unlawful monetary gains" by defendant. *Home Box Office,* at *id*.

For these reasons, the Court finds that Plaintiff has not adequately alleged the Defendant willfully violated Section 605.

### D. Determining damages

Plaintiff supplied an affidavit from an investigator, Joe Rossetti, who attests that he visited "Cruisin Club" on April 12, 2014 (the night of the fight) and made several observations. *See* ECF No. 33-5. Mr. Rossetti paid a $10 cover fee at the door, walked past several security guards, and entered the main area of the location, which sounds like a standard bar. ECF No. 33-5, PageID.205. Within this area, Mr. Rossetti observed five total televisions, but only two of them were showing the *Manny Pacquiao v. Timothy Bradley* fight program. *Id*. Mr. Rossetti said that there also was a DJ playing live music at the same time. *Id*. Mr. Rossetti claims that the maximum capacity for this location is 200 people, though it is unclear whether this is his best approximation based on his observations only, or if he obtained this number from a Fire Marshal certificate or something other public record. *Id*. Mr. Rossetti claims to have performed three head counts during his visit, observing about 130 people in the establishment. *Id*. It is unclear whether Mr. Rossetti included service staff and members of security in his head count.

Plaintiff's actual damages are $3,200—the amount of the unpaid licensing fee.[1] Plaintiff only accuses Defendant of a single violation of Section 605.

---

[1] Plaintiff supplies a "Rate Card" indicating that the fee for an establishment with a capacity of 200 people is $3,200.00. ECF No. 33-6, PageID.208. Mr.

Even if the Court found that defendant willfully violated Section 605, $110,000 would be excessive, as that is an amount that would likely put defendant out of business. *See Joe Hand Promotions, Inc. v. Granada Lounge, Inc.*, No. 11-13062, 2012 WL 447272, at *3 (E.D. Mich. Feb. 13, 2012) (awarding an amount that is adequately deterrent but not enough to put Defendants out of business); *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 502 (S.D.N.Y. 2008) (quoting *Garden City Boxing Club, Inc. v. Polanco,* 05 Civ. 3411(DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006) ("Courts, however, must bear in mind that 'although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business.'").

Section 605 allows damages for non-willful violations either in the amount of actual damages plus "any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages," or in an amount between $1,000 and $10,000, as the Court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(I)&(II). Plaintiff has not provided any allegation of Defendant's gross revenue or what they believe to be Defendant's profits gained from airing the boxing match—elements that are

---

Rossetti attested that the capacity of Cruisin Club was exactly 200 people. ECF No. 33-5, PageID.205.

required for the Court to award actual damages under 47 U.S.C. § 605(e)(3)(C)(i)(I). The Court instead exercises its discretion under 47 U.S.C. § 605(e)(3)(C)(i)(II) to award an amount it considers just. Accordingly, the Court awards a total of $10,000 statutory damages—less than one-tenth of the amount requested—to Plaintiff for Defendant's single, non-willful violation of Section 605. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). This amount is the maximum statutory damages allowable for non-willful violations, and the minimum amount allowable for willful violations. If the Court had found Defendant's mere default adequate to establish a willful violation, the amount awarded would still have been $10,000, reflecting no prior history of violations by Defendant, and an at-best-de-minimis showing of willfulness. However, in awarding the maximum statutory damages for non-willful violations, the Court is observing that Defendant's unacceptable conduct in allowing the broadcast to air in their establishment was compounded by their default.

The Court finds $10,000 to be just, and adequate to send a deterrent message to other establishments to be very careful about airing programs without paying the requisite licensing fee. This amount also more-than-adequately compensates Plaintiff, as it is more three times their actual damages in lost licensing fee revenue.

The Court **GRANTS** an award of **$10,000.00** in damages to Plaintiff for Defendant Cruisin1's non-willful violation of Section 605.

## II. Attorneys' Fees and Costs

Section 605 also requires an award of costs and reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii) ("The court— shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.").

Counsel from Hubbell DuVall, PLLC submitted a Time and Expense tracking sheet in support of their requested fees. ECF No. 33-7. For the reasons discussed below, the Court will approve $7,201.25 in total costs and fees for Hubbell DuVall, PLLC.

### E. Lodestar analysis

The first step in determining attorneys' fees is "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–37 (1983) (noting that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate")). The party requesting the fees has the burden of establishing that they are entitled to the requested amount. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837,

848 (6th Cir. 2013). "The key requirement for an award of attorney's fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Inwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). The trial judge must "question the time, expertise, and professional work of [the] lawyer" applying for fees. *Earl v. Beaulieu*, 620 F.2d 101, 103 (5th Cir. 1980). And, in calculating the appropriate award, "the district court is required to give a clear explanation," as to its reasoning. *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004).

To determine a reasonable hourly rate for attorneys or firms located out-of-state, "courts use as a guideline the prevailing market rate, which is defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (quotation marks omitted)). As such, the Court uses a report produced regularly by the State Bar of Michigan called the "2017 Economics of Law Practice, Attorney Income and Billing Rate Summary Report," available at

https://www.michbar.org/file/pmrc/articles/0000153.pdf (hereinafter "2017 Report").[2]

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Thus, trial courts "may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time," *id.*, and need only provide "a concise but clear explanation" of their reason for reaching a certain fee award amount. *Hensley*, 461 U.S. at 437.

Plaintiff's counsel asserts that the requested fee is based on a reasonable number of hours, and that the responsible attorney's hourly rate of $245.00 per hour is reasonable and in line with local attorneys of similar experience. ECF No. 33, PageID.178 (brief in support of motion); PageID.183 (counsel's affidavit). Counsel for plaintiff claims that attorney fees totaled $6,198.50, costs totaled $1,002.75, and these amounts combined equal $7,201.25.

Plaintiff's counsel, Clinton Hubbell, provides documentation that litigation activities comes to a total of 25.30 hours. ECF No. 33-7, PageID.217–223 ("Plaintiff's Counsel's Time and Expense Tracking"). This tracking sheet includes 45 tasks, 44 of which are

---

[2] In determining the reasonableness of their rates, Plaintiff's counsel relied upon the 2014 version of this Report, mistakenly believing it to be the most recent update to the report. *See* 2014 Report, ECF No. 33-8 (Exhibit 8). The Court uses the more recent 2017 Report.

16

assigned to Mr. Hubbell, and one of which was completed by Anupama Gokarn. *Id.* at PageID.217. The tasks reflect standard litigation activities (attending depositions, drafting pleadings, court mandated telephonic conferences, etc.), and range from 0.10 hours of time on the low end (tasks such as reviewing the scheduling order) to 3.20 hours on the high end (drafting and revising the motion for default judgment). *Id.* at PageID.219–221. Most of the tasks register as less than an hour. Though this sheet indicates a rate of $0.00 per hour, the total number of hours indicated (25.30 hours) multiplied by a rate of $245.00 per hour (the rate claimed in the motion, ECF No. 33, PageID.178) does equal the amount requested by counsel: $6,198.50.

Counsel for Plaintiff did not supply the court with his CV, nor indicate how long he has practiced, nor what his title is—information which is important in determining the correct lodestar for fee awards per the 2017 Report. His profile on the Hubbell DuVall PLLC website indicates that he graduated law school in 2008, and that he founded the firm (with fellow attorney Dylan DuVall) that same year. *See* Clinton J. Hubbell, *Our People*, Hubbell DuVall PLLC, https://hubbellduvall.com/people/clinton-j-hubbell/. The firm is located in Southfield, Michigan and does not appear to employ any other attorneys other Messrs. Hubbell and and DuVall. *About Us*, Hubbell DuVall PLLC,

https://hubbellduvall.com/about/. As such, the Court considers Mr. Hubbell a named partner of a small, single-office law firm, with over ten years of experience.

The Report finds that for partners,[3] the hourly billing rate ranged from $223.00 (25th percentile) to $567.00 (95th percentile), with median rates ranging between $290.00–$315.00, and mean rates ranging between $300.00–$329.00. 2017 Report at 4. For all attorneys with 11–20 years of experience, hourly rates range from $225.00–$500.00, with a mean of $302.00. *Id*. Hourly rates for attorneys located in Southfield, Michigan ranged from $220.00–$510.00. *Id*. at 5.

Mr. Hubbell's proffered hourly rate of $245.00 is well within the range for similarly-situated attorneys, and is not approaching the 95th percentile for any of the relevant categories examined in the 2017 Report. Mr. Hubbell's rate is at or below the average hourly rates of similarly-situated attorneys.

Having reviewed all applicable categories and ranges in the 2017 Report, the Court will reimburse Mr. Hubbell at the rate and amount requested, because both his hourly rate and the number of hours he expended in pursuit of this case are reasonable for similarly-situated attorneys practicing in Michigan. Accordingly,

---

[3] Including "Managing Partner," "Equity Partner/Shareholder," and "Non-Equity Partner." 2017 Report at 4.

the Court **GRANTS** Plaintiff attorneys' fees in the amount of **$6,198.50**.

Plaintiff also requests reasonable costs, and includes in the expense tracking sheet an accounting of the various cost-inducing activities associated with this litigation. ECF No. 33-7, PageID.224–225. These items include such things as filing fees, court reporter costs for depositions, process server fees, and postage costs, among other things. *Id*. The Court has reviewed the costs listed and determined that they are all reasonably incurred costs given the nature of this litigation. Accordingly, the Court also **GRANTS** Plaintiff **$1,002.75** for costs.

### III. Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiff's "Renewed Motion for Default Judgment Against Defendant Cruisin1 Inc., and to Dismiss Defendants, Tiger White, and Stanley Kalisek" (ECF No. 33), enters default judgment against Defendant Cruisin1 Inc., and awards to Plaintiff:

$10,000.00 in damages under 47 U.S.C. § 605(e)(3)(C)(i)(I)&(II),

$6,198.50 in reasonable attorneys' fees,

$1,002.75 in reasonably incurred litigation costs,

for a total of $17,201.25.

Defendants Tiger White and Stanley Kalisek are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: April 12, 2019   s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on April 12, 2019.

s/A. Chubb
Case Manager